# EXHIBIT A

5-28 Federal Court Hearing.txt

                                                                1
F5S4LevC


1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    LASTONIA LEVISTON,

4                   Plaintiff,

5              v.                          15 CV 3989 (KPF)

6
     CURTIS JAMES JACKSON, III
7    a/k/a 50 CENT,

8                   Defendant.

9    ----------------------------x
                                          New York, N.Y.
10                                        May 28, 2015
                                          1:40 p.m.
11   Before:

12
                        HON. KATHERINE POLK FAILLA,
13
                                          District Judge
14

15   APPEARANCES

16
     NAPOLI BERN RIPKA SHKOLNIK
17        Attorney for Plaintiff
     BY:  HUNTER J. SHKOLNIK
18
          -and-
19
     FREIDIN DOBRINSKY BROWN ROSENBLUM
20        Attorney for Plaintiff
     BY:  PHILIP FREIDIN
21        JONATHAN E. FREIDIN
          RANDY ROSENBLUM
22
          -and-
23
     SCHLAM STONE & DOLAN
24        Attorney for Plaintiff
     BY:  JONATHAN MAZER
25


          SOUTHERN DISTRICT REPORTERS, P.C.      (212) 805-0300
♀
                                                                2
     F5S4LevC


1    APPEARANCES (CONTINUED)

5-28 Federal Court Hearing.txt

```
2
3      BICKEL & BREWER
            Attorney for Defendant
4      BY:   STEPHANIE L. GASE
            JAMES S. RENARD
5
6      ALSO PRESENT:  PATRICK NELIGAN (BY TELEPHONE)

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25


            SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
♀                                                        3
       F5S4LevC


1            (In open court)
2            THE DEPUTY CLERK:  In the matter of Lastonia Leviston
3      versus Curtis James Jackson, III, also known as 50 Cent.
4            Counsel, please identify yourselves for the record,
                              Page 2
```

5-28 Federal Court Hearing.txt

 5    beginning with plaintiff.

 6              MR. SHKOLNIK:  Good afternoon, your Honor.  Hunter

 7    Shkolnik from Napoli Bern Ripka Shkolnik.  I have along with me

 8    co-counsel in the case, who are not yet admitted pro hac, and I

 9    would ask that they be allowed to introduce themselves and if

10    they can be admitted for the purposes of this hearing pro hac

11    in case they're needed.

12              THE COURT:  Okay.  Tell me who they are, please.

13              MR. P. FREIDIN:  My name is Philip Freidin.

14              MR. J. FREIDIN:  Jonathan Freidin.

15              MR. ROSENBLUM:  Good afternoon, your Honor.  Randy

16    Rosenblum.

17              MR. MAZER:  Your Honor, I'm Jonathan Mazer from Schlam

18    Stone & Dolan.  I'm New York counsel, so I am admitted.

19              THE COURT:  You are admitted.

20              So Messrs. Freidin and Mr. Rosenblum are not admitted

21    to the Southern District of New York; is that correct?

22              MR. ROSENBLUM:  That is correct, your Honor.

23              THE COURT:  ARE each of you admitted to the New York

24    bar?

25              MR. SHKOLNIK:  They're Florida attorneys and admitted

              SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
                                                              4
      F5S4LevC

 1    pro hac for the state court action, and they're all admitted to

 2    the Florida bar and the Southern District of Florida.

 3              MR. P. FREIDIN:  Mr. Jonathan Freidin is not admitted

 4    pro hac in the state court.

 5              THE COURT:  Mr. Jonathan Freidin, are you planning on

 6    speaking today?

 7              MR. J. FREIDIN:  If it is an issue, I can defer to my
                                Page 3

5-28 Federal Court Hearing.txt

8    co-counsel here.
9           THE COURT:  For now, Mr. Philip Freidin and
10   Mr. Rosenblum, I'm admitting you pro hac for purposes of this
11   proceeding.
12          Mr. Jonathan Freidin, we will see, but that may make
13   it a little bit easier.
14          Okay.  There are folks at the back table; thankfully,
15   mercifully, fewer folks at the back table.
16          Please introduce yourselves.
17          MS. GASE:  Yes, your Honor.
18          Stephanie Gase, Law Firm Bickel & Brewer, on behalf of
19   Mr. Jackson.  I'm admitted in the Southern District.  However,
20   my colleague, Mr. Renard, is not admitted in the Southern
21   District, and would also request that he be admitted pro hac
22   for purposes of this hearing.
23          THE COURT:  All right.  I will allow that.  I am
24   allowing two for the front table, I might as well allow one for
25   the back.

           SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
                                                          5
     F5S4LevC

1           We need to talk about Mr. Neligan.
2           MS. GASE:  Yes, your Honor.
3           THE COURT:  Okay.
4           MS. GASE:  He is bankruptcy counsel.
5           THE COURT:  That is the issue.  In dialing him in, in
6    this courtroom, it complicates matters because this courtroom
7    was not designed to have folks participate by telephone.
8           So I want to understand, in the first instance, is he
9    necessary for you to make your arguments today?  I don't wish
10   to compromise your ability to argue things.  I just want to
                              Page 4

5-28 Federal Court Hearing.txt

11    know whether he is signing on so that he can listen in or

12    whether he is needed.

13              Mr. Renard.

14              MR. RENARD:   Your Honor, good afternoon.   If I may?

15              THE COURT:   Yes.

16              MR. RENARD:   Your Honor, this case has been involved

17    in the litigation as long as our firm has been involved.

18              THE COURT:   Which has been about two months, sir?

19              MR. RENARD:   Two months.

20              THE COURT:   Okay.

21              MR. RENARD:   I even less so and even on a more

22    tangential basis.

23              Mr. Neligan does represent the entity in bankruptcy.

24    SMS, as I think the papers reflect, is a wholly owned entity by

25    Mr. Jackson.   And actually, your Honor, he is in a much better

              SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
                                                              6
     F5S4LevC

1    position certainly than I -- and I think I can speak on behalf

2    of Ms. Gase -- and Ms. Gase, to address the issues, your Honor,

3    applicable to this.   So not only would it be helpful for

4    Mr. Neligan to participate, but I think it would be essential

5    to hear from Mr. Neligan because Ms. Gase and I have much less

6    to offer in terms of the mechanisms and reasons why Mr. Jackson

7    is important to the bankruptcy that has been filed.

8              So we would ask your Honor -- I regret the fact that

9    he is not able to be here.   I know everyone is interested in

10    getting this done.   I can say, if for any reason the Court

11    wanted to have a conference call later subject to your Honor's

12    availability, he would be available.   He certainly could be

13    here tomorrow, but I'm not suggesting for a moment that

5-28 Federal Court Hearing.txt

14    anything be postponed.  I understand the Court's and the
15    plaintiff's and all the parties' desire to get this addressed.
16    That's all I'm saying, is he is available by phone if there is
17    any way we can have him.  Otherwise, I think the argument will
18    be a lot less than it could be without his participation.
19          THE COURT:  Let me explain to you another concern that
20    I have that transcends the acoustical ones.  It is that, to my
21    understanding, Mr. Neligan represents the SMS entity.
22          MR. RENARD:  Yes.
23          THE COURT:  I don't understand that he represents an
24    entity that is in the case before me now.
25          MR. RENARD:  That is correct, your Honor.  It is

                SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
                                                                   7
      F5S4LevC

1     Mr. Jackson's entity that is in bankruptcy.  It is because of
2     that bankruptcy that this case has been removed, and
3     Mr. Neligan can far better address the efficiencies and the
4     reasons for the removal.  I understand he does not represent
5     the defendant but they are related entities.  Hearing from him
6     would benefit the Court greatly in understanding the reason for
7     the removal and the relationship between the pending bankruptcy
8     and this case that has been removed.
9           THE COURT:  Mr. Skolnik, are you taking the laboring
10    work for the folks at the front table?
11          MR. SHKOLNIK:  Yes, your Honor.
12          THE COURT:  This is a little bit unorthodox, if you
13    will let me use that adjective, because normally I will have
14    folks speak to me when they represent someone in the case
15    before me.  That said, I don't want this matter continued for
16    another period of time.  I'm sure you don't, either.
                            Page 6

5-28 Federal Court Hearing.txt

17          MR. SHKOLNIK:  We don't.

18          THE COURT:  Can I understand that you're not going to

19    be objecting to my hearing from Mr. Neligan as to what he

20    wishes to tell me about things bankruptcy-related?

21          MR. SHKOLNIK:  Your Honor, we will not object to that

22    if it is going to result in a continuance of some type.  We

23    don't believe he has standing to make the argument, but we're

24    not going to object, your Honor.

25          THE COURT:  All right.  I would like someone somehow

          SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

                                                              8
      F5S4LevC

1     related to the defense to explain to me why things have

2     happened in the way they have.  I'm sure you do, as well.  For

3     this reason, we're going to have to bring him on board.

4           MR. SHKOLNIK:  Yes, your Honor.

5           THE COURT:  Mr. Lopez, could you please see if you can

6     obtain Mr. Neligan's presence by phone.

7           THE DEPUTY CLERK:  Yes, your Honor.

8           THE COURT:  Ms. Gase, while that's happening, I do see

9     you involved with some of the proceedings in the state court

10    that I have been looking at in preparation for this proceeding.

11    While I do think it may prove useful -- and Mr. Renard suggests

12    to me it may be necessary -- to have Mr. Neligan speak about

13    the bankruptcy issues, may I speak with you about the

14    procedural issues in the case; how we came to where we are, how

15    we came to the point prior to filing of bankruptcy by SMS.

16          Is that things as to which you have knowledge, or Mr.

17    Renard?

18          MS. GASE:  Yes, your Honor.

19          THE COURT:  Let's talk about what's happened prior to

                                Page 7

5-28 Federal Court Hearing.txt

20    the bankruptcy, and I can do that I think while we're trying to
21    secure the presence of Mr. Neligan, because again his focus is
22    on the bankruptcy.
23          Ms. Gase, you have received the motion for remand
24    and/or abstention that was filed yesterday?
25          MS. GASE:  Yes, your Honor.

          SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
♀                                                         9
      F5S4LevC

1          THE COURT:  Have you also received the sort of
2     compendium; it's the declaration of Mr. Skolnik and a series of
3     documents that are attendant to that?  Have you gotten that, as
4     well.
5          MS. GASE:  Yes, your Honor, although I don't have
6     copies of the exhibits with me in court today.
7          THE COURT:  I don't believe you need them.
8          Really, my question is much simpler than that.  There
9     is a recitation of a series of events concerning the filing of
10    the litigation, the scheduling of trial, and certain
11    applications that were made to Justice Wooten.
12          Are you familiar with the recitation of facts
13    contained in the remand papers?
14          MS. GASE:  Yes, your Honor, I'm generally familiar.  I
15    have reviewed the papers.
16          Is there a specific section I can maybe direct my
17    attention to?
18          THE COURT:  No, no.  The question, hopefully, is
19    simpler.  Without acceding to maybe editorial comments about
20    the timeliness or the reasons for certain things, is the
21    chronology that is set forth substantially accurate?
22          MS. GASE:  Some of the times, I believe, are not
                              Page 8

5-28 Federal Court Hearing.txt

23    accurate.

24          THE COURT:  Okay.

25          MS. GASE:  For example, my understanding of when the

      F5S4LevC

1     notice of removal was filed -- that just comes to mind quickly

2     -- as being at 2:25 Tuesday is not an accurate statement.  It

3     was filed before 11:00 a.m. that morning.  I believe that that

4     was corrected.  I was not at the hearing on Tuesday.  I believe

5     that was corrected at the hearing by the clerk who accepted the

6     papers.

7           THE COURT:  So I want to make sure we're talking about

8     the same thing.  The Southern District Clerk's Office received

9     your notice of removal prior to 11:00 a.m. on Tuesday?

10          MS. GASE:  Yes, your Honor.

11          THE COURT:  Okay.

12          MS. GASE:  As well as the Clerk's Office at New York

13    Supreme.

14          THE COURT:  Okay.  Essentially, rather than the

15    11 minutes, I think is a time frame that I'm being asked to

16    consider, it is closer to two and a half to three hours, is

17    what you're saying?

18          MS. GASE:  Well, no.  I think there are two different

19    things.  Particularly, I was referencing what I believe it is

20    page 2 of the memo of law --

21          THE COURT:  Yes.

22          MS. GASE:  -- at the second full paragraph, where it

23    starts, "The defendant filed this notice of removal at the

24    state court at 2:25 --

25          THE COURT:  I see.

                              Page 9

5-28 Federal Court Hearing.txt

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
⚥

11

F5S4LevC

1          MS. GASE:  Directly as to that statement.
2          THE COURT:  You say, instead, the notice of removal in
3     the state court is prior to 11:00 a.m.?
4          MS. GASE:  Correct.
5          THE COURT:  Was anything filed at the federal court?
6     No?
7          MS. GASE:  The notice of removal was filed at the
8     federal court.
9          THE COURT:  Okay.  At what time?
10          MS. GASE:  Other than before 11:00 and before it was
11     sent to the state court, I can't really tell you the specific
12     time.  I understand it was around 10:30.
13          THE COURT:  Okay.
14          MS. GASE:  That's my general understanding.
15          THE COURT:  I want your best understanding.
16          Do we have Mr. Neligan?
17          THE DEPUTY CLERK:  Yes, we do.
18          THE COURT:  We're going to put Mr. Neligan on
19     momentarily.
20          Again, this is an unfortunate consequence of the setup
21     of this courtroom; only one of us will get to use the
22     microphone at one time.  I'm going to share with him.  I'm
23     going to take control when I need to.
24          Hold on, please.
25          Mr. Neligan, this is Judge Failla.  Are you hearing

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
⚥

12

F5S4LevC

5-28 Federal Court Hearing.txt

1  me, sir?

2          MR. NELIGAN:  Yes, your Honor.

3          THE COURT:  Mr. Neligan, I have been told by Mr.

4  Renard and Ms. Gase of the Bickel & Brewer firm that you are

5  particularly well suited to answer any questions that I may

6  have about bankruptcy.

7          But, sir, I have a couple of questions preliminary to

8  those questions that I'm going to be speaking about with

9  Ms. Gase.  I'm going to ask you to sort of remain on the

10  line to listen as best you can as to what is going on in this

11  courtroom, and then I will turn to you, sir, when I need to

12  discuss bankruptcy issues with you.  All right?

13          MR. NELIGAN:  Thank you, your Honor.

14          Before I start, I wanted to know, do I need to file a

15  motion pro hac vice or am I allowed to appear?

16          THE COURT:  I'm going to allow you to appear for

17  purposes of this proceeding because Mr. Renard has made clear

18  to me that you are important to their ability to communicate

19  their arguments to me in the most effective manner possible.

20          MR. NELIGAN:  Thank you, your Honor.

21          THE COURT:  Thank you, sir.

22          Ms. Gase, let me continue with you, then, and we will

23  talk more about what happened beforehand.

24          We're in agreement, however, that the removal papers

25  were filed before noon on the day that the trial was going to

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

♀                                                          13

F5S4LevC

1  begin; correct?

2          MS. GASE:  Yes, your Honor.

Page 11

5-28 Federal Court Hearing.txt

3       THE COURT:  Other than that departure from the

4   chronology, as set forth in the plaintiff's moving papers, are

5   there other assertions regarding chronology with which you

6   disagree?

7       MS. GASE:  I can't recall exactly where it is in the

8   papers, your Honor, but I do believe that counsel was informed

9   prior to 11:00 of the notice of removal as well as -- again, I

10  don't know what time the papers were handed up to the judge.  I

11  believe it was around 11:15 that the judge was informed of the

12  notice of removal.

13      THE COURT:  Okay.  That was Tuesday of this week;

14  correct?

15      MS. GASE:  Correct.

16      THE COURT:  Monday was Memorial Day.

17      Monday were you participating in any meetings with

18  plaintiff's counsel regarding the trial?

19      MS. GASE:  Yes, your Honor.  I was going through the

20  exhibits, I believe, with Mr. Rosenblum.

21      THE COURT:  In any of those meetings on Monday,

22  Memorial Day, did you discuss with your adversary the

23  possibility that there would be a notice of removal filed on

24  Tuesday?

25      MS. GASE:  I did not, your Honor.

        SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

♀                                                       14

    F5S4LevC

1       THE COURT:  Could you tell me why not?

2       MS. GASE:  At that point, I'm not sure whether or not

3   bankruptcy was finalized or not.  Again, I'm not bankruptcy

4   counsel.  I was not personally involved in the bankruptcy

5   aspect of this whatsoever.  I was continuing forward to prepare

5-28 Federal Court Hearing.txt
6   for trial.

7           THE COURT:  I will ask the question more pointedly.

8   At what moment in time did you first understand that there was

9   a possibility that the SMS entity was contemplating a

10  bankruptcy petition?  When did you first know?

11          MS. GASE:  Friday afternoon.

12          THE COURT:  Friday afternoon.

13          At any point between Friday afternoon and Tuesday

14  morning, did you communicate to any of plaintiff's counsel the

15  possibility that this was going to happen?

16          MS. GASE:  No, your Honor.

17          THE COURT:  Okay.  When did you know that it was a

18  likelihood, or when did you know it was a certainty?  When did

19  you know it was going to be filed?  At any time prior to

20  Tuesday morning?

21          MS. GASE:  My understanding was it was sometime late

22  Monday evening.

23          THE COURT:  Monday evening.

24          I suspect I know the answer to this:  Did you

25  communicate to plaintiff's counsel then?

            SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
                                                              15
♀
    F5S4LevC

1           MS. GASE:  No, your Honor.

2           THE COURT:  Did you show up for trial on Tuesday?

3           MS. GASE:  No, your Honor.

4           THE COURT:  Because you assumed the bankruptcy was

5   going to at least temporarily or otherwise stay the trial?

6           I just want to know why they weren't told.  I can

7   imagine, preparing for trial and getting things together and

8   then -- it is one thing to find out that your adversary has

                          Page 13

5-28 Federal Court Hearing.txt

9      filed a petition for bankruptcy, or someone related to your

10     adversary has filed a petition for bankruptcy, but to not even

11     have their counsel tell you about it might be off-putting.  I

12     want to understand what was going on.  And if the answer is you

13     just didn't tell them, that's fine, too.  If there is something

14     you can explain to me that gives me context, I would be happy

15     to hear it.

16              MS. GASE:  Yes, your Honor.  I believe we were waiting

17     to inform plaintiff's counsel until the bankruptcy had actually

18     been filed and finalized.  My understanding is that we were

19     waiting for that on Tuesday morning.  When I was informed of

20     that is when I sent off the letter and email to plaintiff's

21     counsel.

22              THE COURT:  So just so I'm clear, the basis that is

23     being articulated for removal, is that under 1334(b), which is

24     original but not exclusive jurisdiction because of the

25     bankruptcy proceeding?  Is that correct?

                SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

                                                              16

       F5S4LevC

1               MS. GASE:  The specific numbers --

2               THE COURT:  I understand.

3               This case was removed because of the bankruptcy

4      petition filing and not because of any other federal question

5      claim or any other allegation of diversity; correct?

6               MS. GASE:  That was the purpose.  I do believe there

7      is diversity in this case.  I believe the purpose of the

8      removal was based on the bankruptcy, your Honor.

9               THE COURT:  You believe there is diversity in the

10     case?

11              MS. GASE:  The parties are from different states, it

5-28 Federal Court Hearing.txt

12  is a controversy over 75,000.  But I don't believe that was the

13  reason for the removal.  I'm not saying that that was the

14  reason.

15          THE COURT:  I do understand that.

16          Mr. Neligan, I'm going to talk to you for a moment,

17  sir.

18          Sir, I would like to understand, please, how it is

19  that the case in which you have been involved, which was filed

20  in Connecticut, is related to the case that is now before me.

21  Sir, because you would agree with me, would you not, that

22  Mr. Jackson is sued in his individual capacity in the case

23  before me; is that correct?

24          MR. NELIGAN:  That is correct, your Honor, but there

25  is case law both in the First Circuit and other courts related

          SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

⚲

                                                            17

F5S4LevC

1   to jurisdiction regarding a showing that the litigation

2   conceivably could have an impact on the bankruptcy.  Here it

3   would have a material impact.  I think, if the Court doesn't

4   mind, if I could describe the company and Mr. Jackson's role

5   and then perhaps just address the timing.

6           SMS Promotions is a boxing promoter.  They have a

7   number of boxers under contract.  Initially, it looked like

8   there was three to five hundred thousand of debt.  As we're

9   learning more, the amount of the debt could be substantially

10  higher.  The claims include landlords claims, utility claims,

11  there are contract claims, there are potentially claims from

12  prior promotions, and there's another issue that has arisen.

13  Again, just for the record, I'm not necessarily admitting

14  liability or waiving defenses for SMS, but as the Court may be

                        Page 15

5-28 Federal Court Hearing.txt

15  aware, in professional football, there has been a lot published

16  about concussions and the impact on professional football

17  players.

18          THE COURT:  Speak a little slower and louder.

19          Thank you.

20          MR. NELIGAN:  Yes, your Honor.  I'm sorry.

21          THE COURT:  No, no, that's okay.

22          MR. NELIGAN:  There are also a number of other

23  potential claims, tort claims, that can arise from boxers with

24  concussions.  Again, I want to make clear in the record that

25  SMS is not waiving defenses to those claims in the bankruptcy,

          SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

                                                              18

♀  F5S4LevC

1   but that is a concern we have with respect to the chapter 11

2   and how to deal with it.

3           THE COURT:  All right.

4           MR. NELIGAN:  Mr. Jackson is the sole manager.  More

5   important, he is really only the viable party who can fund the

6   plan of reorganization.  There are going to be contracts that

7   need to be rejected.  There are some contracts that need to be

8   assumed with modifications.  Mr. Jackson is really our only

9   viable option for funding the plan.

10          If the Court doesn't mind, let me address the timing

11  for a second, because I know from the plaintiff's standpoint,

12  they're looking at this from the standpoint of their client,

13  and I think you got to step back for a second because it is not

14  uncommon for a company or an individual, when they're in

15  substantial litigation, to not only look at what are settlement

16  possibilities, but in a worst-case scenario, how will the

17  judgment be paid.  The net result of that is -- and Mr. Jackson

                                  Page 16

5-28 Federal Court Hearing.txt

18   is not the first person who has done this -- they begin looking
19   at their liquidity, looking at their businesses, examining the
20   different pools on the cash flow.  The result of that is that
21   in looking at his investments and businesses, it is clear that
22   SMS Promotions needs to restructure its debt.  It needs to
23   address a number of these creditor claims in a way that makes
24   sense and is orderly.  The best way to do that is chapter 11.
25          I know there is, obviously, a concern about the

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
                                                          19
F5S4LevC

1    timing.  In no small part, it is not unusual for a company or
2    an individual, when there is potential for a large judgment, to
3    really then focus on what that will mean after the fact.  I say
4    all this, I will tell you obviously the defense counsel feel
5    very confident -- and I'm sure plaintiff's counsel does, as
6    well -- but it would be foolish for a defendant not to examine
7    the impact of a judgment, the impact of cash flow needs on his
8    or her various businesses or investments.  So it is not just a
9    situation where litigation triggered the bankruptcy.  It is the
10   need to examine and analyze the business issues going forward
11   and cash needs going forward.
12          THE COURT:  Mr. Neligan, I get to speak now.  Thank
13   you.
14          MR. NELIGAN:  I'm sorry.
15          THE COURT:  I have a couple of questions about that
16   because certainly I could understand this examination process
17   that you've described if Mr. Jackson was looking at his
18   individual liabilities and the liabilities that might attend to
19   the lawsuit.  But I find it odd that he would suddenly start
20   worrying about SMS and its liabilities since SMS is not a party

Page 17

5-28 Federal Court Hearing.txt

21    to this litigation and since I would have thought that one of
22    the reasons Mr. Jackson is operating SMS as opposed to
23    individually involving himself in the promotion of boxing is to
24    limit the ability to which he could be liable, despite being
25    the sole owner and manager.  I would have thought that there

              SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
                                                                  20
      F5S4LevC

1     ought to be some respect for the corporate forum.  So I'm
2     having difficulty understanding why this litigation should
3     prompt him to think about SMS's liquidity; and secondly, why I
4     should worry about SMS's liquidity when they're not involved in
5     this case at all.
6              I don't think, sir, that you're suggesting that there
7     is going to be an alter ego issue here.  Are you?
8              MR. NELIGAN:  Your Honor, I would certainly hope not,
9     but having practiced bankruptcy law for a long time, there are
10    often circumstances where alter ego actions are brought.  That
11    said, Mr. Jackson's concern for his business is I think a
12    natural part of looking at his various investments.  And
13    although he may not have -- I would hope he would have no
14    personal liability for these debts -- and certainly that's our
15    position -- ultimately whether or not this business and this
16    investment makes sense and is going to be able to restructure
17    its debt hinges on Mr. Jackson and his ability to fund.  So
18    while legally we would take the position, he would not have any
19    personal liability on the creditor claims of bankruptcy, from a
20    practical standpoint, in order to preserve the business and to
21    pay those creditor claims, he is going to need to fund a plan
22    of reorganization because there is really no other option for
23    this company, no other realistic option for this company.

                        Page 18

5-28 Federal Court Hearing.txt

24        While I know this Court is concerned solely about the
25   litigation, the fact remains that businesses owned by

           SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

♀                                                              21
     F5S4LevC

1    Mr. Jackson will require his cash and will require further
2    investment.
3            From the standpoint of the chapter 11, it is critical
4    to have Mr. Jackson as an available funding source for the
5    plaintiff.  And the issue relating to jurisdiction really goes
6    not to the party litigants but, rather, from the standpoint of
7    the chapter 11 debt and whether or not that litigation will
8    have an impact on the bankruptcy and the administration of the
9    bankruptcy.
10           THE COURT:  Mr. Neligan, I would also like to
11   understand -- and perhaps I have misperceived the initial
12   bankruptcy filing in the District of Connecticut -- but there
13   has been no reference regarding the possibility of liability
14   for concussion lawsuits, nor did I understand the liabilties of
15   the SMS entity to exceed $500,000.
16           Before you answer that, let me make this clear to you.
17   I am aware that things change and that in the course of a
18   bankruptcy the debtor and the individuals involved with
19   representing the debtor may come to different conclusions than
20   they did at the time of the initial petition, but your petition
21   was two days ago, so I would like to understand how it is so
22   much more expansive than it was on Tuesday.
23           MR. NELIGAN:  Your Honor, you are correct.  Based on
24   what we knew and the information we had, we thought three to
25   five hundred thousand.  As we are getting more information --

           SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
                         Page 19

5-28 Federal Court Hearing.txt

⚲
22

F5S4LevC

1    again, this happens in almost every chapter 11 I have seen --
2    the debtor's initial view of the debt in debtor's books and
3    records on the amount of debt isn't necessarily the amount of
4    debt or claims that would be filed in the case and/or claims
5    that will arise.  You are correct with respect to tort claims,
6    potential tort claims, that is an issue for us to work through.
7    I don't want to suggest that we have liquidated tort claims out
8    there, but it is an issue that we're considering in the context
9    of a plan of reorganization.  It is common when a company or
10   entity goes in, if there are potential tort claims, to try to
11   deal with those.  Nonetheless, the purposes of the petition, we
12   were very careful to put down exactly what we understood the
13   debtor's books and records reflected.
14           THE COURT:  Okay.  Mr. Neligan, let me ask you this:
15   It seems to me that what we have been talking about for the
16   past few minutes concerns the issue of whether the case was
17   appropriately removed from state court to federal court, and so
18   that is an issue and something I need to think about.  Assuming
19   for the sake of argument and to sort of forestal the remainder
20   of this discussion that it was properly removed, must I not
21   also consider whether mandatory or permissive abstention is
22   appropriate?  Don't those avenues exist irrespective of the
23   state of the bankruptcy position?
24           MR. NELIGAN:  Yes, your Honor.
25           Let me say, with respect to mandatory remand, that

              SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
⚲
23

F5S4LevC

1    does not exist here simply because there is diversity
                              Page 20

5-28 Federal Court Hearing.txt

2    jurisdiction.  It may not be removed for that, but there is

3    diversity jurisdiction, and there is -- by virtue of the

4    contribution claim, I think the better approach would be to

5    have everything occur in a single forum.  Certainly, I don't

6    think because of the separate diversity jurisdiction, even if

7    it wasn't removed for that, that by definition, then mandatory

8    abstention would not apply.

9         Obviously, the Court has the discretion to remand, and

10   that is certainly up to the Court.  From our perspective,

11   though, we think given -- certainly from the debtor's

12   perspective, SMS Promotions, given the impact on the chapter

13   11, we would urge the Court to maintain this litigation in the

14   Southern District.  And I assume they are going to be seeking

15   to file a motion to transfer venue to Connecticut, so that

16   everything can be heard both in the context of the district

17   court and the bankruptcy court with respect to the chapter 11.

18        THE COURT:  I want to make sure we're speaking about

19   the same thing.  I think what you were just speaking to me

20   about was my ability to have equitable remand powers under

21   Section 1452(b).  I also want to understand whether you or

22   Mr. Renard or Mr. Gase will be addressing with me mandatory

23   abstention under 1334(c)(2) and permissive abstention under

24   1334(c)(1).

25        MR. NELIGAN:  I will defer to the litigators to

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
                                                    24
F5S4LevC

1    address both those issues.

2         THE COURT:  All right.  I'm sure Ms. Gase and

3    Mr. Renard thank you for that.

4         I'm going to let you stand down for a moment.  I want

5-28 Federal Court Hearing.txt

5  to talk to the folks at the front table.  I have been asking a
6  number of questions of you.  I would like to now talk to them.
7        Mr. Shkolnik --
8        MR. SHKOLNIK:  Yes, your Honor.
9        THE COURT:  -- it would be my preference to put to the
10  side the issue of whether removal was proper or not and to
11  focus on either my ability to remand equitably under 1452(b) or
12  the two versions of abstention that I have just talked about.
13  Unless you have something that you really want to engage on
14  with respect to the bankruptcy, I don't know that we really
15  want to go down the road of determining how related or not it
16  is.
17        MR. SHKOLNIK:  Your Honor, that is fine.  I want to
18  make one point.
19        THE COURT:  Please, sir.
20        MR. SHKOLNIK:  Just to clarify, you asked the direct
21  question about when was the filing for the bankruptcy --
22        THE COURT:  Yes.
23        MR. SHKOLNIK:  -- and I'm not quite sure that the
24  answer was accurate.  We have in the notice of removal -- it is
25  Exhibit D, Docket 4 to 6, and I believe it is page-- I think it

          SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
                                                              25
     F5S4LevC

1  is 6 of 78 -- under the bases of removal, it says that the
2  bankruptcy filing -- this is what they certified to the Court
3  May 25th.  We know that the stamping and the computer
4  processing occurred the following day on the 26th, like the
5  same thing that happened us to here when we filed our papers
6  manually.  It takes awhile for docketing.  But I think, at
7  least according to the representation made both here and in the
                              Page 22

5-28 Federal Court Hearing.txt

8    state court the other day, it was actually filed on the 25th.

9             THE COURT:  Okay.

10            MR. SHKOLNIK:  The second point I think for

11   clarification is -- and I know it is quibbling over time -- but

12   counsel did not appear in court until 2:25 in the afternoon on

13   Tuesday, and they missed a hearing held by Judge Wooten where

14   he outlined what he did, what the judge did, to determine if

15   there was a filing in the state court.  He not only had his

16   court clerk contact the court clerk, the actual official clerk,

17   he got on the phone with the clerk of the court of New York

18   County -- I forgot the gentleman's name -- spoke to him

19   directly -- Milton Tingling -- pulled him out of a meeting,

20   actually, who then instituted an investigation in the clerk's

21   office, which I guess you know from practicing here in

22   New York, they may be a little overwhelmed down there, and they

23   did a search-and-destroy type of mission, and they identified

24   that no such paper was filed with the clerk.  In fact, the

25   filing occurred at 2:27 in the afternoon.  I just wanted to

          SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
                                                        26
     F5S4LevC

1    correct the record in response to the question that you had

2    posed before.

3             As to the issue of the bankruptcy, I will defer any

4    references to that.

5             Thank you.

6             THE COURT:  While you're standing, sir, I am now

7    told -- and I did not appreciate this until this hearing --

8    that actually diversity exists, as well.  Do you agree?

9             MR. SHKOLNIK:  I'm sorry.  May I defer to counsel on

10   that?

                              Page 23

5-28 Federal Court Hearing.txt

11          THE COURT:  Mr. Rosenblum, are you speaking to this

12   issue?

13          MR. ROSENBLUM:  Yes, your Honor.

14          I don't think any of us were aware that the issue of

15   diversity was going to be raised by the defense as some

16   additional ground --

17          THE COURT:  Nor was I, sir.

18          MR. ROSENBLUM:  What I'm saying now is, the benefit of

19   my thoughts without having researched this issue, I can tell

20   you what my understanding is, I will argue -- first, to answer

21   your question directly, there is diversity to the extent --

22          THE COURT:  Don't give me air quotes.  There is or

23   there isn't.

24          MR. ROSENBLUM:  There is diversity because our client

25   is a Florida resident and Mr. Jackson is a Connecticut resident

          SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
                                                          27
     F5S4LevC

1    and/or New York resident.  So there is diversity between them.

2    But that doesn't resolve the question of whether or not

3    diversity could serve as a basis for the Court to have

4    jurisdiction.  Based on the fact that this case has been

5    pending for over five years and based on the fact that

6    diversity existed the moment that this lawsuit was filed in New

7    York state court, it is my understanding of the law --

8          THE COURT:  Did you say diversity existed at the time

9    -- which lawsuit was filed --

10          MR. ROSENBLUM:  The New York state lawsuit.  There's

11   diversity and there was diversity then because our client at

12   that time was a Florida resident when she filed the lawsuit and

13   Mr. Jackson was either a Connecticut or New York resident at

                              Page 24

5-28 Federal Court Hearing.txt

14    that time.  So my point is that diversity would have existed

15    the moment this lawsuit, meaning the New York underlying tort

16    action, was initially filed.  We are now five-plus years since

17    that action was filed.  My understanding of the law is that if

18    there is going to be a removal based upon diversity, that is

19    the grounds for removal.  That must be done, I thought, within

20    and not to exceed a year of the initial filing if that is going

21    to be the basis for jurisdiction.

22          So I raise this simply because our argument would be

23    that although diversity exists, it is not a basis for

24    jurisdiction before this Court at this time because we are post

25    five years since that action was filed and the defendant never

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

28

F5S4LevC

1     sought to remove, never hinted about removal, and therefore,

2     this case could not be removed based on diversity jurisdiction.

3           THE COURT:  But you are anticipating my question,

4     which is:  Putting aside for the moment whether this case was

5     properly removed -- because I have had a long discussion with

6     Mr. Neligan, and I may not want to resolve the "related to"

7     issue.  As you look at the factors that courts have identified

8     for mandatory abstention, one of them is that 1334 is the sole

9     basis for jurisdiction.  And what I believe you're telling me

10    is that has, in fact, been satisfied here because even though

11    five years ago diversity could have been asserted, it is too

12    late now for it to be asserted, and therefore, that factor is

13    satisfied.  Is that what you're saying, sir?

14          MR. ROSENBLUM:  That is my argument.

15          THE COURT:  Okay.  All right.  I understand that

16    argument.

Page 25

5-28 Federal Court Hearing.txt

17          Mr. Skolnik, I want to talk to the folks at the back
18     table about mandatory and permissive abstention.  I'm not sure
19     that they have been thrilled to have that thrust upon them by
20     Mr. Neligan.  But is there anything else that I need to discuss
21     with you, sir, about the appropriateness of the removal?
22          MR. SHKOLNIK:  No, your Honor.  Just one other point
23     that follows from what counsel just mentioned.  Assuming -- and
24     I'm not quite sure if Mr. Jackson is a New York or Connecticut
25     resident -- assuming he was a New York resident, which I think

          SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
                                                              29
     F5S4LevC

1      can be argued, his ability to remove the case to federal court
2      I think would be lacking if it is simply for diversity
3      purposes.  I don't think he would be able to do the removal
4      under the statute.  That is one of the issues that I think we
5      weren't prepared to argue in length today.
6           THE COURT:  Okay.  Thank you.
7           Please understand, I have been preparing based on the
8      papers that I have received, and those papers include your
9      removal papers to get the case to me.  It is news to me that
10     diversity exists or didn't exist, and I would like you to think
11     about what Mr. Rosenblum was saying about its applicability in
12     this setting.  Let me hear from you on that and anything else
13     you would like to tell me.
14          MR. RENARD:  Thank you, your Honor.
15          In what I'm about to say, I'm probably going to betray
16     an understanding of bankruptcy law that goes beyond my actual
17     understanding.
18          I'm actually looking at a draft response that we had
19     in the works to this motion, your Honor.  Here is what I

5-28 Federal Court Hearing.txt

20   understand:   Counsel is both correct and incorrect.   In terms
21   of an ability to remove the case for diversity jurisdiction,
22   that time has passed.
23            By the way, the plaintiff, as I understand it, is a
24   Florida citizen.   The defendant, Mr. Jackson, is a citizen of
25   the state of Connecticut.   I heard it could be argued New York.

              SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
♀                                                            30
     F5S4LevC

1   He is a citizen of the state of Connecticut.
2            THE COURT:   I think he wanted the clarity.   You have
3   now confirmed it.
4            MR. RENARD:   I guess the difference there, to the
5   extent that it is relevant, not being a citizen of New York but
6   rather being a citizen of Connecticut, being sued in New York,
7   he would have had the ability to remove because he is not a
8   citizen of New York.
9            That said, your Honor, there are two cases that I see
10   in this draft brief that I have not myself read but I
11   understand stands for the proposition that, as the court
12   pointed out, one of the factors for mandatory abstention is
13   that -- I'm sorry -- 1334 federal question is the sole basis of
14   the removal.   I understand that there are two cases --
15            THE COURT:   I think 1334 is the issue of bankruptcy --
16            MR. RENARD:   Yes, I'm sorry, in issues of bankruptcy.
17            There are two cases that I have here to cite that
18   stand for the proposition that for the purposes of determining
19   whether mandatory abstention should apply that diversity
20   jurisdiction can be asserted in the responsive papers to a
21   motion for remand.
22            THE COURT:   Sure, but in those cases, had they
                              Page 27

5-28 Federal Court Hearing.txt

23    exceeded the one year threshold that Mr. Rosenblum has called

24    to my attention?

25          MR. RENARD:   I'm not sure.

      SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
                                                          31
      F5S4LevC

1           But what it would stand for, the proposition by

2     definition, is that that wasn't the basis on which it was

3     removed because these cases stand for the proposition you can

4     first bring it up.

5           THE COURT:   You have answered my initial question and

6     not my new question.   But go ahead, please tell me those cases.

7           MR. RENARD:   Your Honor, the first is Lead I Joint

8     Venture v. North Fork Bank, 401 B.R. 571, pinpoint cite at 582.

9     That is Eastern District, New York, 2009.   The second is a West

10    Law cite.   Pennock v. Dean, 2007, W.L. 542132 at *8.   That is

11    the Western District of New York, February 2007.

12          That is the best I have to offer on that, your Honor.

13    I don't claim to be knowledge about that particular point or

14    that case law other than I'm a messenger there in terms of

15    passing along what was in the draft.

16          THE COURT:   Okay.   Are you going to be telling me

17    anything else that is in that draft response brief or in the

18    consciousness of either counsel about why it is this is not an

19    appropriate case for mandatory abstention?   And maybe that is

20    your argument.   And why is this not an appropriate case for

21    permissible abstention or --

22          MR. RENARD:   Well, I understand Me. Neligan kicked

23    that back to us.   I understand that the relationship between

24    the bankruptcy and the fact that Mr. Jackson has control of

25    that bankruptcy and the fact that entity needs immediate

                              Page 28

5-28 Federal Court Hearing.txt

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

32

F5S4LevC

1   attention, financial and managerial, in connection with the
2   bankruptcy, and the fact that we have this case, it is the
3   relationship between the two, your Honor.  I apologize I'm not
4   better prepared to address that fact.
5         THE COURT:  Perhaps we can go through a couple of
6   factors, and you can tell me whether you contest them or not.
7         MR. RENARD:  Sure.
8         THE COURT:  In the mandatory abstention context -- and
9   I'm using factors that have been set forth in a couple of
10   different cases trying to get sort of a wide range -- the first
11   question is:  Was the application timely brought?  I think you
12   would concede it was, yes?  The application for remand or
13   abstention is within a day or two of your removal.
14         MR. RENARD:  Yes.
15         THE COURT:  And the proceeding before me would have to
16   be based on a state law claim.  My understanding of this
17   litigation suggests that it is; correct?
18         MR. RENARD:  Yes, your Honor.  Statutory claim and
19   common law claim.
20         THE COURT:  The issues here in the case before me
21   relate to but do not arise out of title 11.  What we're talking
22   about right here are not bankruptcy claims.  Do you agree that
23   that has been satisfied?
24         MR. RENARD:  Yes.
25         THE COURT:  The one where we may have some interesting

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

33

F5S4LevC

5-28 Federal Court Hearing.txt

1    issue is whether 1334 is the sole basis for jurisdiction.  I
2    think we just had that communication right now.  The question
3    is:  Is there an action commenced in state court?  I think that
4    is very interesting existentially because it was and now it is
5    here.  That might be satisfied.
6          The sixth is that the proceeding, which in my mind is
7    this proceeding if it were to go back to state court, can be
8    timely adjudicated in state court.  And I would think, sir,
9    given the pendency of a trial date, it is sort of tough to
10   argue that this would be forever in some state court backlog.
11   It seems to me that your arguments are at points four and five.
12   Do you agree?
13         MR. RENARD:  I think, your Honor, that that is
14   correct.  Not having the enumerated points in front of me but
15   having it somewhere in the brief the Court hasn't seen, yes,
16   your Honor.
17         I will mention one thing for what it is worth.
18   Mr. Neligan alluded to this fact.  We attempted once we came in
19   to bring in the rapper, Rick Ross, whose allegation we have
20   made that on Mr. Ross' website is the first time this full
21   video was posted.  We tried and failed to bring Mr. Ross in
22   within the past 60 days into the state court suit.  We have
23   since sued Mr. Ross.  That is certainly related to this action
24   and the whole idea of contribution and who is ultimately
25   responsible for damages, if any, that the plaintiff has

          SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
                                                        34
     F5S4LevC

1    suffered.  That has been filed.  That, too, has been removed,
2    as Mr. Neligan alluded to.  If we had the chance, we would seek

5-28 Federal Court Hearing.txt

3   to transfer that all in and adjudicate all at the same time.  I

4   just throw that out there because that is a factor that is

5   related to the desire to remain in federal court.

6         THE COURT:  I appreciate your letting me know this

7   because this is the first time hearing about this lawsuit.

8   Actually, I suppose Mr. Neligan's adversion to it is the first

9   that I'm hearing about it.  But I haven't seen it.  I don't

10  know whether there has been an attempt to relate it to whatever

11  judge was assigned to this case, who happens to be me.  I

12  understand there is something else in the offing, and we will

13  have to see what to do with that.

14        Sir, there is, as well, permissive abstention, and I

15  don't know if you want me to talk to you about these.  These

16  are a little bit more fluid factors, they're not necessarily

17  ones for which there are "yes" or "no" answers.  Perhaps you

18  might want to just look at the draft that I know you wanted to

19  submit to me and make for me, sir, what you think are the

20  strongest arguments as to why I should not remand this matter

21  and why I should not abstain.

22        MR. RENARD:  Your Honor, I confess, on the short

23  notice -- and nothing is wrong with the short notice given the

24  circumstances of this case -- I wasn't prepared to go through

25  that.  I would just say that I know Mr. Neligan referenced back

SOUTHERN DISTRICT REPORTERS, P.C.      (212) 805-0300

♀                                            35

F5S4LevC

1   to us.  If there is anything he can add to this, it would be

2   helpful.  But your Honor, in terms of going through this, I'm

3   just not prepared.  I apologize.

4         THE COURT:  Don't apologize.

5         MR. RENARD:  I have to confess.

5-28 Federal Court Hearing.txt
6              THE COURT:  Have you read the draft, sir?
7              MR. RENARD:  I have looked over portions of it.  I was
8    focusing on in the few minutes here the mandatory abstention
9    because I heard the issue come up.  I was not involved in its
10   drafting.
11             THE COURT:  I understand.
12             Ms. Gase, are you in any better position to speak to
13   this?
14             MS. GASE:  No, your Honor.  I was not involved in the
15   drafting in any way.
16             THE COURT:  May I assume there is no one in the
17   courtroom whom you can conscript to aid in talking about what
18   they drafted --
19             MR. RENARD:  It would be a stranger --
20             THE COURT:  I understand.  There are very thoughtful
21   law clerks and interns back there.  I don't believe they can be
22   conscripted by you at this time.
23             Mr. Neligan, there is a suggestion, sir, that though
24   you're not here, you might still be the person to talk about
25   with respect to abstention.  If there is any insight or

          SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
                                                              36
     F5S4LevC

1    argument you would like to make to me on this topic, I would be
2    happy to hear from you.
3              I hope it is evident from the questions that I have
4    posed to the parties here so far that I have actually looked at
5    this issue.  I have spent the last 24 hours thinking about
6    this, and I have conscripted those people behind you and to my
7    right to look at these issues.  It is not as though I'm simply
8    accepting plaintiff's counsel's representations.  I'm kicking
                         Page 32

5-28 Federal Court Hearing.txt

9    the tires as to these claims, but I do want to hear from you.

10        Mr. Neligan, what do you want to tell me?

11        MR. NELIGAN:  Your Honor, with respect, I think you

12   were asking about permissive abstention.  With respect to that,

13   the courts look at factors such as the impact on the efficient

14   administration of the bankruptcy estate, you know, the extent

15   that you have state law issues, the issue of the prejudice to

16   the parties.  And from our standpoint, first, we think it is

17   very clear that Mr. Jackson's position with the debtor and his

18   ability to finance the debtor is the only real viable means of

19   having the plan of reorganization to deal with the creditor

20   claims in this bankruptcy.  So we think, clearly, that factor

21   militates in favor of keeping the litigation in federal court.

22        THE COURT:  I guess an issue I'm having in this

23   regard -- and I know this may seem gauche -- I'm trying to get

24   a sense of Mr. Jackson's assets.  If you said to me that the

25   claims, the liabilities may have been an outside figure of

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

                                                37

♀   F5S4LevC

1    $500,000 but actually it is approaching two or three million

2    dollars and Mr. Jackson has but $5 million to his name, that is

3    one thing.  There has been a suggestion in plaintiff's papers

4    that he is worth significantly more than that.  I guess I'm

5    trying to understand whether you believe that he is going to be

6    losing his shirt in the SMS venture.  I appreciate you might

7    not want to give the specifics of every dime that he may have

8    in whatever holdings, but I need to have at least a sense of

9    the magnitude that we're talking about, because his situation,

10   given his career and his holdings, I suspect is far different

11   from mine as a government employee.

Page 33

5-28 Federal Court Hearing.txt

12          Can you speak to me on that issue?

13          MR. NELIGAN:  Yes, your Honor.  And aside from the

14  fact, in the plaintiff's case, they refer to a listing by

15  Forbes, which may or may not be accurate, and I will also say

16  I'm not intimately familiar with Mr. Jackson's complete

17  financial position, but there seems to be -- and I have seen

18  this in bankruptcies where there is a confusion between net

19  worth and liquidity, the ability of a person or company to

20  actually pay those debts as those debts become due and to fund,

21  in this case, a plan of reorganization.  Regardless of

22  Mr. Jackson's net worth, the question is his liquidity, his

23  ability to fund this plan of reorganization.  And frankly,

24  there may be other businesses that ultimately have to go into

25  chapter 11, all of which will require funding.

          SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
⚲
                                                              38
F5S4LevC

1          The question I would submit is not necessarily

2   Mr. Jackson's net worth but his liquidity, his ability to fund

3   a plan and to fund various obligations of his different

4   investments.

5          THE COURT:  Again, Mr. Neligan, I'm going to have to

6   interrupt.  You concerned me a moment when you said that there

7   may be other businesses that have to go into reorganization.

8   Perhaps I misheard you.  Today I have one petition.  I should

9   consider that one petition in deciding what to do with respect

10  to the litigation that was removed to me.  You're not

11  suggesting that I should be mindful or that I should take into

12  account the possibility that somewhere down the road he will

13  seek to reorganize other entities of his; are you?

14          MR. NELIGAN:  Your Honor, I'm representing SMS, and I

                              Page 34

5-28 Federal Court Hearing.txt

15    can speak to that.   Again, I appreciate the Court's position

16    because you have to rule on what's before you.   But I think --

17    again, I go back to the whole timing issue -- because in this

18    litigation, which I think has prompted a focus on his cash

19    requirements for those investments and his ability, if there

20    was a worst-case scenario of a judgment, his ability to pay

21    that and still try to maintain his various businesses, from

22    which his net worth derives.

23            So my point, though, is that in considering this, in

24    considering related to jurisdiction, the nexus is very close.

25    And to the extent that the Court is considering this, I would

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

                                                        39

F5S4LevC

1    urge the Court to allow this matter to remain in federal court.

2    If the plaintiffs want to seek to have the bankruptcy court

3    make a decision as to that nexus, they're certainly free to do

4    so.   But in the first instance, that nexus, the connection

5    between Mr. Jackson and the debtor I think is very strong and

6    there is nothing I have heard here that would even put that

7    into question.

8            And the notion that Mr. Jackson is so wealthy that

9    somehow he doesn't really need to worry about the various

10   investments he has and his cash needs confuses net worth with

11   liquidity, and it is only through liquidity and having the cash

12   that he is going to be able to keep up his investments.   I

13   think that reference to Forbes, even assuming it is correct,

14   really misses the mark here as to Mr. Jackson's needs and the

15   needs of SMS Promotions.

16           THE COURT:   Mr. Neligan, by the same token, I am

17   troubled by a precedent or at least a practice that would

Page 35

5-28 Federal Court Hearing.txt

18    suggest that in anticipation of the possibility of getting a

19    judgment against you, when of course Mr. Jackson is going to

20    fight very hard to have no judgment against him, simply in

21    anticipation that he could file for bankruptcy suggests that

22    there are these liabilities and potentially many more and to

23    then remove that case to bankruptcy court, that seems quite odd

24    to me.  I can understand going into bankruptcy when you have a

25    judgment, but it sounds like he is just immediately arriving at

                    SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
                                                                    40
♀
       F5S4LevC

1     the worst-case scenario that reorganization is necessary

2     because of the mere prospect of a judgment against him.  That

3     is what I'm having difficulty understanding.  Please help me

4     with that.

5               MR. NELIGAN:  Absolutely, your Honor.

6               The fact is it is the possibility of the judgment that

7     triggers the analysis of the various investments, what needs to

8     be done to make sure those investments have maximized their

9     value and so that he can, in fact, retain his net worth.  It is

10    not just sort of a concern about a worst-case scenario that may

11    or may not occur.  It is that concern, though, which triggers I

12    think a very hard analysis of where his businesses stand at the

13    moment and what those businesses are going to require in the

14    future.  And I do want to sort of address this timing issue

15    because I understand the bankruptcy filing on Tuesday, the

16    Court has concerns about that.  But understand, from my

17    perspective and debtor's counsel, we looked at this and wanted

18    to make sure that bankruptcy could do something for SMS

19    Promotions.  I'm sure the Bickel & Brewer lawyers would have

20    preferred that the filing had occurred earlier.  Until we

                                Page 36

5-28 Federal Court Hearing.txt

21  investigate it and understand what we could do in a bankruptcy

22  and why it was needed, we were not going to file SMS

23  Promotions.  If that has caused inconvenience, I'm sorry, but

24  we take our responsibility very seriously.

25          And here it is not a question of just sort of throwing

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

41

F5S4LevC

1   it into bankruptcy because of a hypothetical worst-case

2   scenario.  It is a question of once there is an intent to focus

3   on what these entities need and whether or not these businesses

4   are viable and whether the cash needs of those businesses make

5   sense, it is that analysis which then leads to the bankruptcy.

6   It is not just sort of a hypothetical concern going forward.

7           Again, I have to say I understand the plaintiff's

8   concerns, but at the same time, nobody is trying to preclude

9   the plaintiff from moving forward in their litigation.   They

10  will get their day in court.  Hopefully, their day in court is

11  a day in court to which all the parties are in one forum, but

12  they will get their day in court.  They may not get it in state

13  court, but they will get their day in court.  So there is no

14  preclusion or elimination of a remedy that they might otherwise

15  have.  On the other hand, from the standpoint of SMS

16  Promotions, it is critical to the reorganization to have

17  Mr. Jackson's commitment and ability to fund that.

18          THE COURT:  All right.  Anything else, sir?

19          MR. NELIGAN:  No, your Honor.

20          THE COURT:  Thank you.  You can stay there.  I want to

21  hear from plaintiff's counsel now.

22          MR. SHKOLNIK:  Can I mention one follow-up, your

23  Honor --

Page 37

5-28 Federal Court Hearing.txt

24          THE COURT:  Yes, sir.

25          MR. SHKOLNIK:  -- before a question is posed.

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

⚲                                                                    42

F5S4LevC

1          The hypotheticals we're hearing about Mr. Jackson and

2   what his finances are, it is kind of ironic, because at the

3   time he filed -- or the time SMS filed for bankruptcy, he chose

4   to give a statement publicly to the press about his

5   $1.6 million win on the Mayweather fight, and therefore SMS is

6   really not a big deal.  It is kind of ironic that these

7   arguments are being made today.

8          THE COURT:  You say ironic; I may say puffery, sir.

9   What I'm understanding from this litigation, because I have

10  read a fair amount into it, is that sometimes how one presents

11  is more important than what one has.  I understand what Forbes

12  says.  I don't know that they were given access to all of his

13  bank records.  I'm sure he didn't mind being referred to with

14  that magnitude of wealth.

15          MR. SHKOLNIK:  I understand.  He did give a statement

16  that he did win that bet for 1.6 million.

17          THE COURT:  He did, sir.

18          Let me understand from you, sir, first of all, let's

19  focus on the mandatory abstention issue --

20          MR. SHKOLNIK:  Yes, your Honor.

21          THE COURT:  -- the two points of contention, which is

22  1334 and whether the action was commenced in state court.  On

23  the first of them, I think Mr. Rosenblum has given me your

24  argument on that front.  Is that correct, sir?

25          MR. SHKOLNIK:  Yes, your Honor.

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
Page 38

5-28 Federal Court Hearing.txt

F5S4LevC

1      THE COURT:  I want to make sure I understand, and
2  perhaps I'm parsing the language too narrowly, the action was
3  commenced in state court and it was removed here.  I don't know
4  whether this particular factor speaks of other actions that I
5  should be thinking about or whether this is the action I am to
6  focus on.  Do you have any insight into that, sir?
7      MR. SHKOLNIK:  I may be confused there.  There is no
8  question it was started in state court and removed here.
9      THE COURT:  Your confusion is because of my question,
10  so I will make a better one.
11      One of the factors for mandatory abstention is a
12  question of whether there was an action commenced in state
13  court.  I thought, at least, an action that began in state
14  court, ended up here, and is being asked to be remanded back,
15  that that satisfies that particular factor, but if it doesn't,
16  I want you to tell me.
17      MR. SHKOLNIK:  Your Honor, we submit that it would
18  have to be a timely removal of the action to meet that factor,
19  and I think that's where they wholly failed here.
20      THE COURT:  I'm sorry.  I'm going to try it again.
21  It's The fifth factor.  Mr. Rosenblum, do you know what I'm
22  talking about?
23      MR. ROSENBLUM:  I do.
24      THE COURT:  If he knows it, let him answer.
25      MR. ROSENBLUM:  I do, and I agree with what the Court

SOUTHERN DISTRICT REPORTERS, P.C.      (212) 805-0300

F5S4LevC

1  suggested our interpretation would be; namely, that because we

5-28 Federal Court Hearing.txt

2   initiated and commenced an action in state court, which was

3   then removed to this court, we believe that that satisfies that

4   criterion that an action be commenced.

5          THE COURT:  So we're left with a point of dispute

6   about the fourth criteria, which is --

7          MR. ROSENBLUM:  Yes, your Honor.

8          THE COURT:  I understand that better.

9          Mr. Shkolnik, do you want to speak to permissive

10  abstention?

11         MR. SHKOLNIK:  Yes, your Honor, I would be happy to.

12         THE COURT:  Thank you, sir.

13         MR. SHKOLNIK:  Are there questions posed, or do you

14  want me to make the argument?

15         THE COURT:  Sir, I had a lovely discussion with

16  Mr. Neligan on the topic.  There are factors that he has

17  identified:  The effect on the efficient administration of the

18  estate, the extent to which issues of state law predominate --

19  I think that one is in your column; the difficulty or unsettled

20  nature of state law; comity; the relatedness or the remoteness

21  of the bankruptcy proceedings; the existence of a right to a

22  jury trial, and the prejudice to involuntarily remove

23  defendants.  There is also sort of a secondary set of factors,

24  and they include the presence of a related proceeding in state

25  court and the likelihood that all of this is the product of

F5S4LevC

1   forum shopping.

2          So I know your view on the last one.  I don't need to

3   hear it.  I don't think that -- I don't think that all of these

4   need equal time.  Give me a couple of points, please.

5-28 Federal Court Hearing.txt

5          MR. SHKOLNIK:  Your Honor, I will go through them
6     individually.

7          I think we have heard a lot of discussion about how
8     important it is to have this case in federal court for the
9     efficient administration of the bankruptcy estate, but I don't
10    think we have seen or heard anything that really supports that
11    contention.  There is nothing about the individual lawsuit
12    being brought by Ms. Lastonia against Mr. Jackson that truly is
13    going to affect the administration of the bankrupt estate.
14    They will be able to process the estate in a very orderly
15    fashion, and it doesn't really appear, other than what we're
16    now hearing all of a sudden about these potential brain injury
17    claims, which we have heard talk about brain injury claims, but
18    no one suggested anyone has brought one, no one has alleged
19    one, no one has ever filed one against SMS.  It seems like it
20    is more grabbing at potential claims that may be out there one
21    day.  Really, there is no reason for this Court to be looking
22    at the orderly administration as a real basis here.

23         With respect to whether or not state laws predominate,
24    I think the Court already addressed that, and counsel conceded
25    that that factor is no question.

              SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
                                                              46
      F5S4LevC

1          Whether or not there has been unsettled law or
2     difficulty with respect to unsettled law, I don't think anyone
3     is arguing that point.  I think the underlying claims are
4     something that are, at best, determined at the state level, and
5     I don't think they're unsettled at all.
6          The comity, I think comity is a very important point
7     here and I think needs to be addressed, and it goes

5-28 Federal Court Hearing.txt

8    hand-in-hand with the forum shopping.  We have a situation that
9    we have a state court judge that has been administering this
10   case for years.  He is sitting in a courtroom, sitting on the
11   bench waiting for lawyers, and has a jury ready to go to start
12   selecting.  The judge has considered the issues.  The judge has
13   issued some important substantive rulings, as well as important
14   administrative rulings in terms of scheduling and setting up
15   the court system.  I think the idea of pulling that case into
16   federal court so plaintiff can get justice at some time in the
17   future, as counsel suggested, is doing the opposite of this
18   court respecting the state court.  There is nothing calling out
19   in this case to say plaintiff should all be brought here to try
20   this case somewhere down the road when this court is available,
21   or whether or not it should go to Connecticut I think is
22   another suggestion that was made.  I think that comity really
23   lies in our favor in this situation.  If something had been
24   done five years ago before the defendants litigated every issue
25   very aggressively, maybe it would be on an even keel, but it

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

⚥                                                          47

F5S4LevC

1    certainly is not.
2           With respect to relatedness or remoteness to the
3    proceeding in the main bankruptcy case, I think this is one of
4    the most important issues for the Court to consider right now.
5    I think the Court has correctly identified certain issues that
6    how does the bankrupting of one small entity that this
7    defendant has really dictate a decision that a case that has
8    been pending for five years against him in an individual
9    capacity should really trump everything.  And here you have
10   Mr. Jackson, who has, among other corporations, his SMS boxing

5-28 Federal Court Hearing.txt

11   and then his G-Unit, then his SMS Audio, and we don't know how

12   many other corporations, none of which they chose to bankrupt.

13   The concern is Mr. Jackson may have to conserve his assets.  If

14   he is worried about a judgment in this case, why isn't he

15   personally filing a bankruptcy petition.  It seems like it is

16   the cart leading the horse here.

17          So I think the argument that you have to look at is,

18   is it remote, and this is certainly remote.  This individual

19   case against Mr. Jackson, among many other lawsuits he has

20   pending against him, against him and as plaintiff -- he is

21   quite the litigious individual -- it is just too remote.  It

22   really is.  This was a grab at a way to get an adjournment,

23   which they couldn't get on multiple occasions.  They knew they

24   would get an adjournment of the trial by doing this.  I don't

25   think they expected a motion to remand as quickly as it came.

          SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300
♀                                                            48
     F5S4LevC

1          With respect to a right to a jury trial, I think it is

2    equal in both.  I think it goes both ways.

3          I'm sorry.  I meant here.  I'm sorry.  Your court.

4          THE COURT:  Your claims have a jury trial component.

5    Your claims are entitled to a jury consideration.

6          MR. P. FREIDIN:  They are going to move to transfer it

7    to bankruptcy, where there is no jury trial.

8          MR. SHKOLNIK:  We are on the same keel here, but I

9    think counsel on the phone made it very clear what the next

10   step was, everyone should go over to Connecticut, where we will

11   not get the jury trial, which is something our client has

12   waited for for five years and she is entitled to.

13          I'm sorry.  I went too slow to getting to the point.

                          Page 43

5-28 Federal Court Hearing.txt

14          I apologize.

15                    THE COURT:   Now everybody gets to talk.

16                    MR. SHKOLNIK:   And certainly the prejudice --

17                    THE COURT:   That is not applicable here.

18                    MR. SHKOLNIK:   I was going to say that, your Honor.

19                    THE COURT:   Thank you.

20                    I'm going to take five minutes, and then I will come

21          back and give you a decision.

22                    Mr. Neligan, do you want to remain on the line, or do

23          you want to speak with Mr. Renard and Ms. Gase later on?

24                    MR. NELIGAN:   I can remain on the line, whatever is

25          convenient for the Court.   I'm fine being here.

                    SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
♀                                                                        49
          F5S4LevC

1                     THE COURT:   I have no additional questions for you,

2           sir.   That is entirely up to you, sir.   If you want to stay,

3           you can stay.

4                     I'm going to get off the bench for five minutes and

5           then come back.

6                     (Recess)

7                     THE COURT:   I will tell you what I'm not going to talk

8           about, which is the appropriateness or the propriety of

9           removal.   I will give that to the defendants at this time.   And

10          I'm not going to talk about mandatory abstention because I have

11          questions about the fourth factor.   But I want to talk about

12          permissive abstention, and I want to talk about equitable

13          remand.   Where this comes out is as follows:   I can't help but

14          be struck by the sequence of events in this case; that there

15          was a litigation commenced in what I believe was February of

16          2010 that has gone through the rather tortuous path it has to

                                      Page 44

5-28 Federal Court Hearing.txt

17    the point of there being a trial set; and that the parties were
18    ready; and that there were these applications beforehand to
19    adjourn the trial, and then those applications had not been
20    granted.
21              I have talked with Justice Wooten; and figuratively,
22    if not literally, he is sitting in his chambers right now
23    trying to figure out what he is going to do with the next two
24    and a half weeks of his time.  He wants to know what is going
25    on.  That's why I had the parties come in today.  I told him I

              SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
♀                                                        50
      F5S4LevC

1     would resolve it promptly and let him know.  So I'm going to do
2     that.
3              I appreciate that the preparations for trial may cause
4     counsel and may cause the litigants to think more clearly and
5     with greater gravitas about the issues in the case.  That all
6     being said, I really do think defense counsel should have given
7     some hint to plaintiff's counsel that a bankruptcy petition was
8     in the offing.  I think it is unfortunate.  I certainly can
9     imagine they wouldn't have appreciated it if the roles had been
10    reversed, finding out at this last minute.
11             Looking at the factors of permissive abstention, which
12    I have outlined and discussed with Mr. Neligan and
13    Mr. Shkolnik, this state case is mighty far along.  We're five
14    years into it.  There have been many substantive motions.
15    We're at the moment of trial when all of this is happening.  So
16    what I'm asked to consider is the degree to which this
17    bankruptcy filing is enough to require it to be moved to, not
18    only to federal court, but to bankruptcy court in Connecticut.
19    That's the ultimate destination that defendant seeks.  I don't
              Page 45

5-28 Federal Court Hearing.txt

20    believe that I can do that.  This is the bankruptcy -- not of
21    the individual defendant -- of a company of his, one of several
22    companies of his.  It is far too removed from the facts of this
23    litigation.  I don't really see that it has any relevance to
24    this litigation.  I appreciate that Mr. Neligan has explained
25    to me how it is related to, but I happen to think that that

                    SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
♀                                                                      51
      F5S4LevC

1     only suffices under a very, very broad reading of any
2     conceivable effect, which is the standard.  I think too many
3     stars have to be aligned in a particular way before it matters.
4             I also noted with interest comments by Mr. Neligan
5     that Mr. Jackson is necessary because he is the only person who
6     can finance SMS, the debtor, and is the only person who can
7     assist in realizing a viable plan of reorganization; actually,
8     it is not even assist, he is the key to a viable plan of
9     reorganization.  While I appreciate Mr. Neligan's concern have
10    to be with the SMS debtor, I'm just not convinced that the
11    state court action is going to impede the ability of
12    Mr. Jackson to fund, if he so desires, the continued existence
13    and operation of the SMS entity.  And I'm not going to consider
14    the possibility that other businesses may go into
15    reorganization because there's been no such petition filed.
16            I'm giving very, very attenuated weight, if any, to
17    the notion of these concussion cases.
18            So I've thought about permissive abstention because I
19    think it is appropriate for me to abstain here, and I'm going
20    to do it.
21            In the alternative, because these are often considered
22    together, I am using my abilities under 1352(b) to engage in
                            Page 46

5-28 Federal Court Hearing.txt

23    equitable remand of the case.

24            For the parties, they are wondering what does that

25    mean.  What that means is I'm going to issue an order in the

        SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

♀                                                        52

        F5S4LevC

1    near term.  And I will talk to our clerk's office about making

2    sure that it gets on the docket as soon as possible.  That

3    order is going to remand the case back to the State Supreme

4    Court of New York County.  It is also going to provide a

5    schedule for the defendants to respond to the fee and cost

6    application because I didn't think they wanted to do that here,

7    and I don't need to do that today.  I will put in some time for

8    that.

9            As I mentioned, I have spoken with Justice Wooten, so

10    I think he or his law clerks are expecting your call after

11    these proceedings, and I think this trial is going forward.

12            Let me end, as I should have begun, by thanking the

13    parties for the work they have done.  Mr. Neligan, I appreciate

14    very much the insights into bankruptcy law that you have given

15    me, and I will tell you that your arguments make more sense to

16    me than they did just in reading the plaintiff's papers.  That

17    should not come as a surprise.  I do appreciate the

18    clarifications you have given.  I do appreciate the cases that

19    were cited to me by the plaintiff's team.  I appreciate

20    Mr. Renard and Ms. Gase's efforts to explain to me the

21    litigation and what has happened.

22            Just too much has happened in the state court for me

23    not to let it finish out its proceedings there.  I will be

24    remanding; or if you prefer, I will be engaging in permissive

25    abstention.  Either way, the motions of the plaintiff are

                        Page 47

5-28 Federal Court Hearing.txt

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300
⚥
                                                              53
F5S4LevC

1    granted.  I will issue the order soon, and I thank you for

2    coming in.

3              With that, Mr. Neligan, I'm going to let you go.

4    Thank you very much, sir.

5              MR. NELIGAN:  Thank you, your Honor.

6              THE COURT:  Thank you very much.

7              (Adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

⚥
          SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300